BORDER NAT. BANK v. COUPLAND.

In re DE BONA'S ESTATE.

(Circuit Court of Appeals, Fifth Circuit. March 9, 1917.)

No. 2978.

1. BANKRUPTCY ☞165(4)—RIGHTS OF TRUSTEE—LIEN—PRE-EXISTING MORT-GAGE.

Under Bankr. Act July 1, 1898, c. 541, § 47a, cl. 2, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), the trustee in bankruptcy takes the status of a lien creditor as of the time the petition in bankruptcy is filed, and his lien is not superior to that of the mortgagee under a pre-existing oral chattel mortgage which by the laws of the state was valid between the parties and as against purchasers with notice and creditors other than lien creditors, and for which was substituted a written mortgage less than four months before bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 266.]

2. BANKRUPTCY ☞303(2)—PREFERENCE—EVIDENCE.

On a petition for a secured claim against the trustee in bankruptcy, evidence that, when the bankrupt purchased the property covered by a chattel mortgage executed less than four months before bankruptcy, he borrowed from the petitioner the money to pay therefor and orally agreed to give the petitioner a lien on the property, is admissible to prove that the chattel mortgage was not given to secure a previously unsecured debt, so that it did not operate as a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 460, 461.]

3. CHATTEL MORTGAGES ☞41—VALIDITY—ORAL MORTGAGE—STATUTE.

Rev. St. Tex. 1911, art. 3970, providing that every mortgage given by the owner of a stock of goods daily exposed to sale in parcels in the regu-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lar course of business, and contemplating a continuance of the possession of the goods and a control of said business by the sale of the goods by the owner, shall be deemed fraudulent and void, does not apply where the property covered by the oral mortgage to a bank was automobiles, which the bank permitted the owner to keep on display and to demonstrate, but which he could not sell without authority from the bank for each particular sale, since such sales were not in the regular course of business.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 84.]

Appeal from the District Court of the United States for the Western District of Texas; William B. Sheppard, Judge.

In the matter of the estate of Joseph De Bona, bankrupt. From a decree of the District Court, sustaining an order of the referee which denied the claim of the Border National Bank against C. C. Coupland, as trustee, for a secured claim, the claimant appeals. Decree reversed.

The petition to have Joseph De Bona adjudged a bankrupt was filed April 1, 1916. The Border National Bank (which will be called the Bank) presented, and prayed to have allowed as a secured claim, a mortgage, dated and executed February 17, 1916, and recorded the next day, by De Bona to it of seven described automobiles, which was given to secure a note of the same date for $5,500 and interest, payable May 17, 1916. The averments of the petition presenting the claim and the evidence in support thereof showed that the $5,500 for which the note and mortgage were given was the balance then owing on an indebtedness of De Bona to the Bank, created in the following manner: On October 12, 1915, De Bona borrowed from the Bank $3,000, giving as security a mortgage on four automobiles. This mortgage was duly recorded. In November, 1915, one of the mortgaged automobiles was sold for $695, and that amount was applied as a credit on the secured note, reducing that indebtedness to $2,305. On December 1, 1915, four automobiles were shipped to De Bona, and a draft with a bill of lading attached for their price, $3,095.-16, was sent to the Bank for collection. To secure the money to pay the draft, so that he could get the bill of lading and the cars, De Bona borrowed the amount of the draft from the Bank, giving his note due in 60 days, and agreeing that the four cars called for by the bill of lading and also the three unsold cars covered by the mortgage of October 12, 1915, stand as security, and that a lien exist thereon for the indebtedness created October 12th and that created December 1st. One of the automobiles so acquired on December 1st was sold on December 6, 1915, and the amount received for it was applied on the last-mentioned note. There was a similar transaction between De Bona and the Bank on January 4, 1916, when another automobile was shipped to De Bona, and a draft for its price with bill of lading attached was drawn on him.

The trustee excepted to so much of the Bank's petition as set out the verbal agreements and understandings accompanying the transactions of December 1, 1915, and January 4, 1916, and objected to the evidence offered to prove such agreements and understandings, upon the following grounds:

"First. Because to allow verbal testimony of such detailed account of past transactions or declarations would, in effect, tend to vary and change and add to the terms of the chattel mortgage of February 17, 1916, under which petitioner seeks to have his claim allowed as a valid secured claim.

"Second. Because under the provisions of the Bankruptcy Act the trustee occupies, as to all the property coming into his possession, the position of a lien creditor, and any prior verbal understandings or agreements had with the bankrupt or any declarations made by him would not be binding upon this trustee, nor would any such testimony be admissible against him for the purpose of affecting his title to such property.

"Third. Such testimony is wholly irrelevant and immaterial to any issue in the case."

These exceptions and objections were sustained by the referee. The trustee objected to the allowance of the Bank's claim as a secured claim on the

grounds that the mortgage constitutes a preference prohibited by the Bankruptcy Act and that it was void under article 3970 of the Revised Civil Statutes of Texas. Evidence adduced before the referee was to the following effect:

As De Bona acquired the automobiles covered by his written and verbal mortgages to the Bank, he placed them in the front part of his store in Eagle Pass, in which he conducted a general brokerage business, handling automobiles, automobile accessories and parts, automobile tires, buggies, etc. None of the automobiles mortgaged to the Bank were sold by De Bona or any of his assistants without De Bona first consulting the Bank and getting special authority from it to sell that car. He was permitted to demonstrate the cars whenever he had a prospective purchaser, but he had no authority from the Bank to make sales which would confer on the purchasers title unincumbered by the Bank's lien. The sales which were made were specially authorized by the Bank, and the amounts realized on such sales were paid to the Bank and applied on the secured debt. The referee held that the mortgage of February 17, 1916, was void under article 3970 of the Revised Civil Statutes of Texas, disallowed the Bank's claim as a secured claim, and allowed it as an unsecured claim.

The Bank appeals from a decree of the District Court which affirmed the order of the referee.

R. D. Wright, of Eagle Pass, Tex. (Sanford & Wright, of Eagle Pass, Tex., on the brief), for appellant.

John J. Foster, of Del Rio, Tex. (King & White, of Eagle Pass, Tex., on the brief), for appellee.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge (after stating the facts as above). [1] Under the law of Texas a verbal mortgage or lien is valid between the parties and as against purchasers with notice and creditors other than lien creditors. Gardner v. Planters' National Bank, 54 Tex. Civ. App. 572, 118 S. W. 1146; Crews v. Harlan, 99 Tex. 93, 87 S. W. 656, 13 Ann. Cas. 863; Galbraith v. First State Bank (Tex. Civ. App.) 133 S. W. 300; Grace v. Wade, 45 Tex. 522; Overstreet v. Manning, 67 Tex. 657, 4 S. W. 248. Under section 47a, cl. 2, of the Bankruptcy Act, as amended in 1910 (36 Stat. 838, 840), the trustee in bankruptcy takes the status of a lien creditor as of the time the petition in bankruptcy is filed. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275; Martin v. Commercial National Bank, 228 Fed. 651, 143 C. C. A. 173. Valid liens created by mortgages made by the bankrupt before the institution of the bankruptcy proceeding are not subordinated to the rights of his trustee in bankruptcy, which vest as of the date of the filing of the petition in bankruptcy. When the verbal mortgages to the Bank were made by De Bona, the lien of the trustee was not in existence. The statute in question does not purport to displace valid liens given before the petition in bankruptcy was filed.

[2] The evidence which was excluded was admissible to prove that the mortgage of February 17, 1916, was not given to secure an indebtedness which previously was unsecured, but was given to secure debts all of which were secured at the times they came into existence by liens valid against any one other than a purchaser without notice or a creditor holding a prior lien. The effect of the execution of that mortgage was to give the creditor written evidence available for rec-

ord, and recorded, of a lien given in exchange for previously existing liens given when the secured debts came into existence. The mortgage of February 17th did not operate as a preference, as it did not diminish the debtor's estate; the effect of it being the mere substitution of one written lien in place of previously existing valid verbal and written liens covering the same property.

[3] "Every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of the business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void." Revised Civil Statutes of Texas (1911) art. 3970. The facts to which this statute gives the effect of invalidating a mortgage, deed of trust, or other form of lien attempted to be given by the owner of any stock of goods, wares, or merchandise are that a continuance of the owner's possession of the goods and control of the business are contemplated and that the goods are daily exposed to sale, in parcels, in the regular course of business. The mortgagor's continued possession of the mortgaged goods does not by itself avoid such a mortgage. To have the invalidating effect given by the statute that fact must be accompanied by the further fact that the mortgaged goods are daily exposed for sale, in parcels, in the regular course of business. The invalidating facts must be shown either by the instrument itself, which undertakes to give the lien, or by other evidence. Bergen. v. Producers' Marble Yard, 72 Tex. 53, 11 S. W. 1027; Gregg & Son v. Cleveland & Co., 82 Tex. 187, 17 S. W. 777; Bettes v. Weir Plow Co., 84 Tex. 543, 19 S. W. 705. Certainly under the terms of De Bona's mortgage to the Bank the former did not have the right to expose the mortgaged automobiles for sale, in parcels, in the regular course of business. The uncontradicted evidence was to the effect that such a right was explicitly withheld, and that it was contemplated and understood by the parties that no mortgaged automobile was to be sold by De Bona without his first getting special permission from the Bank to make the sale. The evidence further showed that the only sales of any of the mortgaged automobiles which were made were in pursuance of special permission given by the Bank, it receiving the proceeds of the sale when made. Sales negotiated and made in the manner disclosed by the evidence are plainly out of the regular course of a mercantile business. Under the evidence in the case the transaction between De Bona and the Bank did not have the effect of enabling the former to deal with the mortgaged machines just as he could have done if they had not been subject to the lien of the mortgage. He was not empowered to sell them in the usual course of business. He could not sell them at all, freed of the lien of the mortgage, except by the Bank's special permission, given after an opportunity to make a sale was presented, and then the proceeds of the sale had to be paid to the Bank, to be applied on the mortgage indebtedness. The statute is aimed at a form of security which would enable a merchant to deal with his stock of goods just as if it was unincumbered, selling it in parcels, freed of the mortgage lien, the mortgagee not receiving the proceeds, and at the same

time have it shielded from the claims of his creditors, other than the preferred one, to whom the ineffectual lien is given. The undisputed evidence in the case negatives the conclusion that the mortgage in question was such a one as the statute quoted declares shall be deemed fraudulent and void.

As the rulings made by the trial court were in conflict with the conclusions above stated, the decree appealed from is reversed.